COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judge Humphreys and Senior Judge Clements
Argued at Richmond, Virginia


MICHAEL KIPLING COOK

MEMORANDUM OPINION[*] BY
v.        Record No. 0155-09-2                          CHIEF JUDGE WALTER S. FELTON, JR.
JUNE 8, 2010

TERESA JANE CROSS


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Michael Kipling Cook, *pro se*.

Ralph E. Main, Jr., for appellee.


Michael Kipling Cook ("husband") appeals from a final judgment of the Circuit Court of

Albemarle County ("trial court") finding husband in breach of his property settlement agreement

with Teresa Jane Cross ("wife").  Husband contends that the trial court erred in (1) ruling that wife's

constructive receipt of a small portion of the proceeds from the sale of the parties' rental property

prevented wife from completing a like-kind exchange pursuant to Internal Revenue Code, 26 U.S.C.

§ 1031 ("1031 Exchange"); (2) denying husband's motion to modify judgment; (3) finding wife

sustained $12,084 in damages arising out of estimated capital gain taxes from the sale of the rental

property; and (4) awarding $5,000 in attorney's fees to wife.  For the reasons stated, we affirm in

part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

Husband and wife were married on June 1, 1997 and separated on September 1, 2000.  They

were divorced by final decree entered December 15, 2008.  The final decree "ratified, confirmed

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and approved and incorporated," but did not merge, the parties' property settlement agreement dated January 6, 2006, as amended by addenda dated April 28, 2006 and July 27, 2006 (collectively "PSA"). The PSA provided, among other things, that husband would allow wife to copy marital documents in his possession, that the parties would sell their jointly owned rental property, known as the Tallwood property, and that the parties could choose to decrease their capital gains tax liability from the Tallwood sale by purchasing "like-kind" property using the Tallwood sale proceeds.

The closing for the sale of the Tallwood property was held on May 19, 2007. Sale proceeds were distributed to the parties except for $5,000, which was placed in escrow by agreement of the parties.[1] The $5,000 escrow was released to the parties on August 20, 2007. Wife initially did not receive the check for her portion of the escrowed funds and was issued a replacement check on September 10, 2007.

On August 10, 2007, prior to the release of the escrowed funds, wife filed a "Notice of Motions" with the trial court alleging that husband breached the parties' PSA for a number of reasons. Specifically, she contended that because $5,000 of the Tallwood sale proceeds were held in escrow, she was unable to defer her capital gains taxes through a 1031 Exchange.[2] She asked that the trial court award her $12,084, an amount representing her *estimated* capital gains tax liability on her share of the Tallwood sale proceeds.[3] She also contended that husband failed to

---

[1] Husband asserted wife owed money to him for his repair work on the Tallwood property, and insisted that a portion of the sale proceeds be escrowed until an agreement was reached as to how much was due him. Wife testified that she agreed to the escrow in order to not lose the sale of the Tallwood property.

[2] A 1031 Exchange allows a taxpayer to defer recognition of capital gain or capital loss tax liability "'when a direct exchange of property between the taxpayer and another party takes place.'" Little v. Cooke, 274 Va. 697, 705 n.8, 652 S.E.2d 129, 134 n.8 (2007) (quoting Bell Lines, Inc. v. United States, 480 F.2d 710, 713 (4th Cir. 1973)).

allow her to copy certain marital documents.  Additionally, wife asked for an award of attorney's fees.

On October 29, 2007, the parties appeared before the trial court on wife's "Notice of Motions."[4]  Rebecca Butler, a CPA and wife's accountant, testified as an expert witness.  Butler testified regarding wife's *projected* capital gains tax liability from the Tallwood property sale proceeds.[5]  She testified that wife would have had to invest all of her share of the Tallwood property sale proceeds in order to qualify for a 1031 Exchange.  She explained that because $5,000 of the Tallwood property sale proceeds were held in escrow, wife was unable to qualify for the tax benefits of a 1031 Exchange.

The hearing on wife's "Notice of Motions" was continued to April 25, 2008.[6]  At the reconvened hearing, Janet Shumaker, a CPA, testified as an expert witness for husband.  Shumaker testified that in order to complete a 1031 Exchange, wife would have had to include specific language related to the proposed 1031 Exchange in both the contract for the sale of the Tallwood property and in the Settlement Statement.[7]

[5] The record contains no evidence that wife in fact sustained capital gains tax liability in that amount from the sale of the Tallwood property.

[4] A court reporter was not present at the October 29, 2007 hearing.  On appeal, a statement of facts was timely filed pursuant to Rule 5A:8 of the Rules of the Supreme Court.  However, the statement of facts does not contain any objections by the parties or any rulings of the trial court in response to any objections.  See Rule 5A:8(c).

[5] The statement of facts does not provide the asserted estimate of capital gains tax liability, but cites to "DEF. EX. 1" that was entered into evidence at trial.  "DEF. EX. 1" is not included in the joint appendix.

[6] A court reporter was present at the April 25, 2008 hearing.  Husband failed to timely file the transcript of that hearing.  A statement of facts filed pursuant to Rule 5A:8 in lieu of the transcript includes evidence pertinent to the April 25, 2008 hearing, but does not include any objections by the parties or rulings by the trial court on any objections made.

[7] Neither document contained the required language.  At trial, wife's "1031 Deferred Exchange Option" addendum to the sales contract, signed only by her, was admitted into evidence.

On August 29, 2008, the trial court issued a letter opinion. It found that husband breached the parties' PSA by failing to deliver certain marital documents to wife for copying, and by preventing wife from taking advantage of the 1031 Exchange because he insisted on escrowing $5,000 of the Tallwood property sale proceeds to pay debts he claimed wife owed him for his work on that property. The trial court ordered husband to pay $12,084 in damages to wife, an amount equal to her *estimated* capital gains tax liability from the Tallwood property sale proceeds. The trial court also ordered husband to pay $5,000 of wife's attorney's fees incurred at trial, explaining that its award of attorney's fees was related to the 1031 Exchange issue and because husband caused wife "to take longer than necessary to present her case." The trial court's rulings in the letter opinion were included in its final order entered on December 15, 2008. No subsequent order was entered by the trial court vacating, modifying or suspending the order of December 15, 2008, which became final on January 5, 2009 pursuant to Rule 1:1 of the Rules of the Supreme Court.[8]

On September 9, 2008, prior to the entry of the December 15, 2008 final order, and later on January 5, 2009, and March 3, 2009, after entry of the December 15, 2008 final order, husband filed motions asking the trial court to modify its rulings. The trial court denied each of husband's motions to modify on April 3, 2009.

## ANALYSIS

### I.

Husband contends that the trial court erred in ruling that wife suffered damages of $12,084 in estimated capital gains taxes as a result of her constructive receipt of a small part of the proceeds from the sale of the parties' rental property, thereby preventing her from being able to complete a 1031 Exchange.

---

[8] Rule 1:1 provides that a decree of the trial court becomes final unless vacated, modified or suspended within twenty-one days of entry.

"Where, as here, the [trial] court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). We review *de novo* the trial court's application of defined legal standards to the particular facts of a case. Lewis v. Lewis, 53 Va. App. 528, 542, 673 S.E.2d 888, 895 (2009).

"[A] 'tax-free exchange' is designed 'to defer recognition of gain or loss when a direct exchange of property between the taxpayer and another party takes place.'" Little v. Cooke, 274 Va. 697, 705 n.8, 652 S.E.2d 129, 134 n.8 (2007) (quoting Bell Lines, Inc. v. United States, 480 F.2d 710, 713 (4th Cir. 1973)). "The very essence of an exchange is the transfer of property between owners, while the mark of a sale is the receipt of cash for the property." Carlton v. United States, 385 F.2d 238, 242 (5th Cir. 1967). In a typical § 1031 transaction, an exchanger, such as wife contends she was here, assigns its rights as seller under a purchase agreement for the disposition of business or investment property to a qualified intermediary. The purchaser of the relinquished property transfers the *net sale proceeds* directly to the qualified intermediary. Here, wife was required to abrogate all control over the net sale proceeds until the exchange was completed. "If the taxpayer actually or constructively receives money or property in the full amount of the consideration for the relinquished property before the taxpayer actually receives like-kind replacement property, the transaction will constitute a sale and not a deferred exchange, even though the taxpayer may ultimately receive like-kind replacement property." Treas. Reg. § 1.1031(k)-1(f).

The record on appeal reflects that when the parties sold the Tallwood property, $5,000 of the net sale proceeds were placed in escrow by agreement of the parties. Because wife's entire portion of the net sale proceeds was not "earmarked" for use in purchasing a like-kind rental property, she was ineligible to complete a 1031 Exchange. See Carlton, 385 F.2d at 243 ("The

money received from [purchaser] by the appellants for the ranch property was not earmarked . . . to be used in purchasing [like-kind properties]. It was unrestricted and could be used by the appellants as they pleased."). We are mindful that wife agreed to place $5,000 of the net sale proceeds in escrow because husband refused to allow the sale of the Tallwood property to be completed without the escrow agreement. Nevertheless, wife *agreed* to the escrow. Additionally, under § 1031, wife was required to identify like-kind replacement property within 45 days of the sale of the Tallwood property in a written document. I.R.C. § 1031(a)(3); Treas. Reg. § 1.1031(k)-1(c). Wife had 180 days from the sale of the Tallwood property to close on the replacement property. I.R.C. § 1031(a)(3). The record on appeal contains no evidence that wife met those requirements. Accordingly, we conclude the trial court erred in finding husband prevented wife from being eligible to complete a 1031 Exchange.

Husband also assigns error to the trial court's finding that wife suffered $12,084 in damages arising from an *estimated* capital gains tax liability as a result of his insistence of escrowing a portion of the Tallwood sale proceeds, thereby preventing wife from completing a 1031 Exchange. Because we conclude that husband's actions did not prevent wife from completing a 1031 Exchange and because no evidence exists in the record to show wife actually suffered $12,084 in damages arising from capital gains tax liability from the sale of the Tallwood property, we conclude that the trial court erred in finding that wife was entitled to damages resulting from her failure to qualify for a 1031 Exchange.

II.

Husband also contends that the trial court erred in denying his motion to modify its final judgment.[9] Wife asserts the trial court did not err because no order was entered vacating,

---

[9] Husband's motion to modify judgment asked the trial court to reverse its award of attorney's fees to wife and its finding that he was at fault for wife's inability to complete a 1031 Exchange.

suspending or modifying the trial court's final order of December 15, 2008.  See Rule 1:1.

Rule 5A:20(e) mandates that appellant's opening brief include "[t]he principles of law, the

argument, and the authorities relating to each question presented . . . ."  Husband did not comply

with Rule 5A:20(e) because his opening brief does not contain any principles of law or citation

to legal authorities to support his asserted trial court error.

Husband has the burden of showing that the trial court erred in denying his motion to

modify judgment.  See Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992).

"Even *pro se* litigants must comply with the rules of court."  Francis v. Francis, 30 Va. App. 584,

591, 518 S.E.2d 842, 846 (1999).  We conclude that husband's failure to comply with

Rule 5A:20(e) is significant.  Accordingly, we will not consider husband's asserted trial court error

that the trial court erred in denying husband's motion to modify judgment.  See Fadness v. Fadness,

52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008) ("If the parties believed that the circuit court

erred, it was their duty to present that error to us with legal authority to support their contention.").

III.

Husband also contends that the trial court erred in awarding wife $5,000 in attorney's fees.

"In considering a trial court's decision to award attorney's fees, 'an award of attorney's fees is a

matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse

of discretion.'"  Richardson v. Richardson, 30 Va. App. 341, 351, 516 S.E.2d 726, 731 (1999)

(quoting Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987)).

The trial court specifically stated that its award of attorney's fees was related to the 1031

Exchange issue and because husband caused wife "to take longer than necessary to present her

case."  Because we reverse the trial court's ruling that husband's actions caused wife to incur an

estimated $12,084 in capital gains taxes, and we are unable to ascertain from the record what

portion of its award of attorney's fees to wife was related to the 1031 Exchange issue and what

portion was related to its determination that husband caused wife "to take longer than necessary to present her case," we reverse its award of $5,000 in attorney's fees to wife and remand for additional consideration of attorney's fees consistent with this opinion.

CONCLUSION

For the reasons set forth above, we affirm in part, reverse in part, and remand for further determination of attorney's fees.

<u>Affirmed in part,</u>
<u>reversed in part</u>
<u>and remanded.</u>